**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MRI Saddlehorn Riviera Investment Fund LLC,<br><br>Plaintiff,<br><br>v.<br><br>Federal Home Loan Mortgage Corporation,<br><br>Defendant. | No. CV-19-01422-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion for Summary Judgment (Doc. 35). Plaintiff MRI Saddlehorn Riviera Investment Fund LLC ("MRI") filed a Response in opposition (Doc. 37), and Freddie Mac filed a Reply (Doc. 39).[1] The matter is fully briefed.[2] For the following reasons, the Court will grant Freddie Mac's Motion in part and deny it in part.

**I.   Background**[3]

In 2006, MRI obtained two real estate loans that were assigned to Freddie Mac (Docs. 1 at ¶ 9; 36 at ¶ 4; 38 at ¶ 4). After the 2008 economic recession, MRI fell behind

---

[1] The Court notes that neither party complied with the Courts Rule 16 Scheduling Order, which specifically stated that parties may not file separate statements of facts (Doc. 36) or controverting statements of facts (Doc. 38) to motions for summary judgment and the corresponding responses. (Doc. 29 at 5).

[2] The parties requested oral argument on this matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[3] Unless otherwise noted, the facts here are undisputed.

on its payments from November 2009 through May 2010.  (Doc. 36 at ¶ 10; 38 at ¶ 10). On November 19, 2009, MRI sent Freddie Mac a letter requesting to restructure the loans.  (Doc. 36-1 at 44–46).

On December 17, 2009, Freddie Mac sent a letter notifying MRI that it was past due on its payments and demanding that MRI pay "default interest," as was Freddie Mac's right under the terms of the loans. (Doc. 36-1 at 48–50; *see also* Docs. 36 at ¶ 6; 38 at ¶ 6). Freddie Mac sent another letter on February 18, 2010, which offered to engage in negotiations to restructure the loans.  (Doc. 36-1 at 52–54).  This second letter made clear that any actual restructure must be agreed to in writing.  (*Id.* at 52).

MRI responded on March 11, 2010, with a debt restructure proposal.  (Doc. 36-1 at 56–57).  Freddie Mac rejected the offer in a May 13, 2010, email and stated that "until all loan payments are brought current [sic] we will not discuss any further workout provisions."  (Doc. 36-1 at 59).  MRI continued to make some loan payments after its proposal was rejected.  (Doc. 36 at ¶ 19; 38 at ¶ 19).  On May 27, 2010, Freddie Mac sent another letter to MRI demanding payment of amounts that were past due under the loans, including the default interest.  (Doc. 36-1 at 63).

Freddie Mac argues there is no evidence that it ever agreed to modify the loans. (Doc. 35 at 7).  MRI, however, argues that on June 8, 2010, it reached an oral agreement with a Freddie Mac employee to waive the then-accrued default interest.  (Doc. 38 at ¶ 7). MRI has not submitted a signed writing evidencing this alleged agreement.  Nonetheless, based on this alleged agreement, MRI alleges it submitted several payments on June 9, 2010 to make the loans current.  (*Id.* at ¶ 30).  MRI also submits a June 9, 2010, email from MRI to Freddie Mac requesting to waive the default interest.  (Doc. 38 at 17).

From June 9, 2010 to February 29, 2016, neither Freddie Mac nor the loans' servicer, Grandbridge Real Estate Capital ("Grandbridge"), took active measures to secure the default interest.  Subsequent statements from Grandbridge do not indicate that any specific default interest is due, nor do they contain a specific line item for default interest. (Doc. 36-1 at 65–71).  However, one statement from June 17, 2010 contains a handwritten

note that the statement "may include other late fees" and "default interest." (Doc. 38 at 20). Others contain the disclaimer that the statement "does not modify the terms" of the loans. (Doc. 36-1 at 67, 71).

Eventually, MRI contracted to sell its property, and it required payoff statements from Grandbridge. These statements, produced on February 29, 2016, included $159,398.59 in default interest. (Docs. 36 at ¶ 24; 38 at ¶ 23). MRI alleges it paid this amount under protest. (Doc. 1 at ¶ 17–18)

The Complaint brings five causes of action against Freddie Mac. Count One alleges Freddie Mac breached a contract by "wrongfully charging default interest and late fees." (*Id.* at ¶¶ 22–25). Count Two alleges Freddie Mac breached the implied covenant of good faith and fair dealing. (*Id.* at ¶¶ 26–32). Count Three is for "Money had and received" and alleges that Freddie Mac possess money that equitably belongs to MRI. (*Id.* at ¶¶ 33, 34). Count Four is for unjust enrichment. (*Id.* at ¶¶ 35–38). Count Five seeks declaratory relief from the Court in the form of a declaration that Freddie Mac waived the default interest and late fees. (*Id.* at ¶¶ 39–43). Freddie Mac moves for summary judgment on all of the claims. (Doc. 35).

## II.   Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record,

including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997).

### III.     Analysis

The Court will address each of the Complaint's Counts in turn.

#### a.     Count One: Breach of Contract

Count One alleges that Freddie Mac breached the terms of the loan agreements. To bring breach of contract claim, a plaintiff must show the existence of a contract, its breach, and the resulting damages. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013). "A written agreement may be subsequently modified by the parties, even where one party has failed to perform by the contract deadline." *Ancell v. Union Station Assocs., Inc.*, 803 P.2d 450, 453 (Ariz. Ct. App. 1990). "[A]ny detriment to promise, or benefit to promisor, constitutes a valid and sufficient consideration for a new promise which would in effect modify terms of the original agreement." *Stovall v. Williams*, 409 P.2d 711, 713 (Ariz. 1966). Freddie Mac argues no evidence supports a breach of contract claim. (Doc. 35 at 7).

MRI argues Freddie Mac agreed to modify the loans. (Doc. 27 at 3). To support this position, MRI cites to an affidavit of its own employee, Mr. William Ziegler, MRI's Manager. Mr. Ziegler avers that Mr. Daniel West, a Freddie Mac employee, told him in a June 2010, meeting that Freddie Mac would waive the then-accrued default interest. (Doc.

38 at 13). Standing on its own, Mr. Ziegler's self-serving affidavit cannot prevent summary judgment. *See Publ'g Clearing House, Inc.*, 104 F.3d at 1171.[4]

Mr. Ziegler also avers that Mr. West asked him to "make a formal request to waive default interest," which Mr. Ziegler appears to have done in an email to Mr. West. (Doc. 38 at 17). The email itself contains no response from Mr. West, nor is there any other documentation directly supporting the assertion that Mr. West agreed to amend the loans aside from the Mr. Ziegler's affidavit. Therefore, the email Mr. Ziegler sent offers no direct support for the proposition that Freddie Mac agreed to modify the loans, only that MRI asked to modify them. (*Id.*)

There is no genuine dispute of fact that the parties agreed to modify the loans. No party disputes that Freddie Mac was permitted to charge default interest under the original terms of the loans. Therefore, without a genuine dispute of fact that the loans were modified, MRI's claim that Freddie Mac breached a contract by charging default interest necessarily fails because MRI has not demonstrated a breach. *See Thomas*, 302 P.3d at 621 (breach of contract claim requires that a party show that the terms of the contract were breached). The Court will grant Freddie Mac's request to enter summary judgment in its favor on Count One.

**b. Breach of Covenant of Good Faith and Fair Dealing**

Count Two alleges that Freddie Mac breached its implied covenant of good faith and fair dealing. (Doc. 1 at ¶¶ 26–32). Every contract, in addition to its terms, contains an implied covenant of good faith and fair dealing. *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 28 (Ariz. 2002). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). "A party breaches the implied covenant of good faith and fair dealing when one party exercises

---

[4] Freddie Mac argues in its Reply that Mr. Ziegler's *affidavit* should be struck because this is the first time that MRI has argued that Mr. West agreed to renegotiate the loans so to waive the default interest. (Doc. 39 at 7). Given that this self-serving testimony is the only evidence that the loans were renegotiated, Freddie Mac will not actually be prejudiced if the Court declines to strike it. Therefore, the Court will deny Freddie Mac's request, without prejudice.

discretion retained or not foreclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Zaki v. Capstone Asset Mgmt. LLC*, 2020 WL 1062039, at *3 (Ariz. Ct. App. Mar. 5, 2020).

MRI argues Freddie Mac waived its right to collect default interest through its conduct such that it is now estopped from arguing that it should retain the default interest. (Doc. 37 at 3). Specifically, MRI argues that the lack of demand letters from the second half of 2010 until 2016 demonstrates waiver, one which MRI reasonably relied upon. (*Id.*) Freddie Mac's Motion argues there is no evidence that it clearly intended to relinquish its right to default interest. (Doc. 35 at 7). However, its Reply does not address the argument that Freddie Mac's silence over a period of six years demonstrates waiver.

A party may waive a contractual right when it acts in a manner that is inconsistent with the intent to assert that right. *Am. Cont'l Life Ins.*, 607 P.2d at 374. To show this "generally requires a finding of intentional relinquishment of a known right or of conduct that would warrant such an inference." *Minjares v. State*, 219 P.3d 264, 268 (Ariz. Ct. App. 2009). There must be a "clear showing of an intent to waive" the contractual right. *Rigoli v. 44 Monroe Mktg., LLC*, 336 P.3d 745, 749 (Ariz. Ct. App. 2014) (quoting *Societe Jean Nicolas et Fils v. Mousseux*, 597 P.2d 541, 543 (Ariz. 1979)). A party is equitably estopped from engaging in taking certain positions when: "(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Valencia Energy Co. v. Arizona Dep't of Revenue*, 959 P.2d 1256, 1267–68 (Ariz. 1998).

The question is whether there is enough evidence to show a genuine factual dispute about whether Freddie Mac waived the default interest. The Court finds there is. The undisputed facts show that after June 9, 2010, when Mr. Ziegler sent a written request that Freddie Mac waive the default interest, Freddie Mac ceased to demand payment of the default interest for about six years. (Doc. 36 at ¶ 10; 38 at ¶ 10). This comes after Freddie Mac's May 27, 2010 letter, in which Freddie Mac demanded full payment of the amounts due, including the default interest, "on or before noon on **June 4, 2010** . . . ." (Doc. 36-1

at 63) (original emphasis).  The letter went on to say that if it did not receive payment by then, "Freddie Mac shall resort to legal remedies available to it for recovery of the Total Past Due Amount . . . ."  (*Id.*)  The record does not show any such legal remedy was ever pursued.  In addition, none of the Grandbridge statements that the parties present from after June 4 or June 9 actually indicate that the default interest was due.  From these circumstances, the Court finds that a reasonable jury could conclude that Freddie Mac waived its right to collect the default interest.

The Court notes Freddie Mac's argument that there is no writing evidencing a waiver, which the February 18, 2010 letter required. (Doc. 36-1 at 52).  However, Freddie Mac's six-year silence on the matter of default interest gives rise to the reasonable inference that this requirement, too, was waived.  *See Anderson*, 477 U.S. at 255 (requiring courts to make all justifiable inferences in non-movant's favor).

Having found that a jury could reasonably find Freddie Mac waived its right to collect default interest, it follows that by requesting the payment of the default interest on February 29, 2016, Freddie Mac exercised its contractual discretion in a way that MRI reasonably expected it would not.  The Court declines to enter summary judgment on Count Two.

### c. Money Had and Received & Unjust Enrichment

Count Three and Four allege that Freddie Mac wrongfully demanded default interest and request repayment of that amount under theories of money had and received as well as unjust enrichment.  (Doc. 1 at ¶¶ 33–38).  A money had and received claim is "is of an equitable character, and it may in general be maintained by any legal evidence showing that the defendant has received or obtained possession of money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff."  *Copper Belle Mining Co. of W. Virginia v. Gleeson*, 134 P. 285, 287 (Ariz. 1913).  To bring an unjust enrichment claim, a plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy at law."  *Murphy v.*

*Woomer*, 478 P.3d 251, 256 (Ariz. Ct. App. 2020). "[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976).

Freddie Mac argues that both of these claims fail because there can be no implied contract when another contract expressly controls the subject matter. (Doc. 35 at 13). As to Count Four, the Court agrees. Because the existence of the parties' loans as the operative contracts is undisputed, the Court will enter summary judgment on Count Four in Freddie Mac's favor. *See Brooks*, 548 P.2d at 1171 (unjust enrichment claim has no application when a governing contract exists). However, Court finds that MRI's money had and received claim survives because MRI has shown a dispute of fact as to whether Freddie Mac should be equitably estopped from keeping the default interest. The Court declines to enter summary judgment as to Count Three.

### d. Declaratory Relief

Count Five seeks declaratory relief as to its right to the funds that were paid to Freddie Mac. (Doc. 1 at ¶¶ 39–43). Defendant seeks summary judgment on this claim. Given that the Court finds a genuine issue of material fact as to whether Freddie Mac waived its right to seek default interest, the Court declines to enter summary judgment on Count Five.

### IV. Conclusion

The Court will grant Freddie Mac's Motion for Summary Judgment as to Counts One and Four. With respect to Counts Two, Three, and Five, Freddie Mac's Motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Freddie Mac's Motion for Summary Judgment (Doc. 35) is **GRANTED** in part and **DENIED** in part as set forth in this Order. Finding no just reason for delay, the Clerk of Court is kindly directed to enter judgment in Defendant's favor for Counts One and Four of the Complaint pursuant to Federal Rule of Civil Procedure 54(b).

**IT IS FURTHER ORDERED** that in light of the partial denial of the Motion for Summary Judgment, the parties are directed to comply with Paragraph 11 of the Rule 16 Scheduling Order (Doc. 29) regarding notice of readiness for pretrial conference.

Dated this 24th day of August, 2021.

_____
Honorable Diane J. Humetewa
United States District Judge